UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EQUINIX, INC.<br>1 Lagoon Drive,<br>Redwood City, California<br><br>          Plaintiff,<br><br>v.<br><br>ISP AUTOMATION, INC. d/b/a ISP FUEL SYSTEMS<br>9 Chris Court<br>Dayton, New Jersey<br><br>          Defendant. | : : : : : : : : : : : : : : : : | Civil Action No. |

# COMPLAINT

Plaintiff, EQUINIX Inc., by and through its counsel, Cozen O'Connor, hereby demands judgment against defendant ISP Automation, Inc. d/b/a ISP Fuel Systems and complain against defendant as follows:

## THE PARTIES

1. Plaintiff, Equinix, Inc. ("Equinix") is a corporation formed under the laws of the State of Delaware with its principle place of business located at 1 Lagoon Drive, Redwood City, California.

2. Defendant ISP Automation, Inc. d/b/a ISP Fuel Systems ("ISP") is a corporation formed under the laws of the State of New Jersey with its principle place of business located 9 Chris Court, Dayton, New Jersey.

## JURISDICTION

3. The Court has diversity jurisdiction over this matter as this dispute involves parties who are diverse from one another and the amount in controversy exceeds the sum of $100,000.00.

LEGAL\73712169\1

4. Venue is proper in this judicial district as the events giving rise to the claims and defenses occurred in this judicial district.

## FACTUAL ALLEGATIONS

5. At all times material hereto, Equinix was the owner and operator of a data center facility located at 5851 West Side Avenue, North Bergen, New Jersey (the "facility").

6. On January 4, 2017, Equinix and ISP entered into a master contract which included standard terms and conditions that governed the parties relationship when ISP was providing goods and services to Equinix ("January 4, 2017 Terms and Conditions")

7. On November 3, 2020, ISP issued and sent Equinix a proposal for the design, sale and installation of diesel fuel filtration and transfer system ("the November 3, 2023 proposal") to be installed for use with four diesel storage tanks at the facility.

8. On November 6, 2020, Equinix issued and sent ISP purchase order number 1040081935 ("the November 6, 2020 PO") accepting certain provision of the November 3, 2020 proposal but adopting and incorporating the January 4, 2017 Terms and Conditions.

9. On or about November 11, 2020, ISP delivered, installed and programed the diesel fuel filtration and transfer system.

10. The New Jersey State Fire Code has adopted National Fire Protection Act as the code applicable to the design and installation of diesel fuel storage, filtration and transfer systems for all such systems installed in New Jersey.

11.     The New Jersey State Fire Code by way of its adoption of the standards set forth in NFPA 30, requires in order to prevent overfills and diesel fuel spillage that all storage, filtration and transfer systems for diesel fuel send an alarm when a storage tank reaches 90% capacity and that all storage, filtration and transfer systems for diesel fuel automatically shut off when the tank reaches 95% capacity.

12.     When ISP designed, sold, installed and programmed the diesel fuel filtration and transfer system, it did so without incorporating the code mandated automatic shut off that should have triggered when tank 3 reached 95% capacity.

13.     On November 11, 2020, ISP issued and sent an invoice to Equinix for the design, sale and installation of the diesel fuel filtration and transfer system which was timely paid by Equinix.

14.     On or about November 1, 2022, the diesel fuel filtration and transfer system was performing a regularly scheduled polish of the diesel fuel in tank number 3, when the system did not completely isolate and failed to fully close the tank number 1 supply valve which caused the overfilling of diesel tank number 3,

15.     As a result of the failure of the diesel fuel filtration and transfer system, diesel fuel overflowed from tank 3, contaminating the soil with free product above NJDEP and EPA soil regulatory levels. In addition, groundwater was impacted at the site and is currently under long term monitoring. As a result of the above-described contamination, Equinix was forced to incur initial clean up and remediation expenses in excess of $479,000.00.

16. In addition, the property may now require a remedial action permit (RAP) that will highlight the spill, place some restrictions on the property's usage, will require an ongoing LSRP certification on a biannual basis, all to the financial detriment of Equinix.

## **COUNT I – NEGLIGENCE**

17. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

18. The diesel spill of November 1, 2022, was caused by and resulted from the negligent, careless and/or reckless acts and/or omissions of ISP, by and through its agents, servants, representatives and/or employees acting within the course and scope of their employment. Said acts and/or omissions consisted of:

   a. failing to properly and adequately design, install and program the diesel fuel filtration and transfer system so that the system caused tank 3 to overfill and leak diesel fuel;

   b. failing to comply with the applicable New Jersey state fire codes, including NFPA 30, which required that the fuel filtration and transfer system automatically shut off once each reach 95% capacity;

   c. failing to properly and adequately design, install and program the diesel fuel filtration and transfer system without an automatic shut off that operates during filtration mode;

19. As a direct and proximate result of ISP's negligent, careless, reckless acts and/or omissions, Equinix suffered damages to its real property consisting of the cost to remove and remediate the diesel spill as well future environmental compliance costs and possible restrictions on the use of the property.

WHEREFORE, EQUINIX demands judgment against ISP for damages in excess of $475,000.00, together with interest, costs, attorneys' fees, and such other relief as may be awarded by the Court.

## COUNT I – BREACH OF CONTRACT

20. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

21. The November 2020 sale and installation of the diesel fuel filtration and transfer system was a sale of goods or alternatively was a hybrid transaction under Cal. Com. Code § 2101, et seq.

22. Pursuant to Cal. Com. Code § 2313(1), ISP expressly warranted that it would perform its services in a manner consistent with the level of care and skill ordinarily exercised by other professionals performing comparable services under comparable circumstances and that its services and all materials supplies furnished by ISP would of good quality and free from any and all defects.

23. The ordinary care and skill required in designing, selling, installing and programing the diesel fuel filtration and transfer system required that it be designed, installed and programed to automatically shut down before overflowing while in filtration mode.

24. ISP breached the foregoing express warranties because the diesel fuel filtration and transfer system was designed, installed, and programmed without the ability to automatically shut off before overflowing while the system was in filtration mode.

25. ISP's breach of its express warranties caused tank 3 to overflow, in turn, causing the diesel spill forcing Equinix to incur costs and expenses in cleaning up and remediating the diesel spill. In addition, groundwater was impacted at the site and is currently under long term monitoring.

26. Pursuant to Cal. Com. Code § 2314(1), ISP impliedly warranted that the diesel fuel filtration and transfer system would be merchantable.

27. A merchantable diesel fuel filtration and transfer system requires that it be designed, sold, installed, and programed to automatically shut off before overfilling.

28. ISP breached its warranty of merchantability the diesel fuel filtration and transfer system was designed, installed, and programmed without the ability to automatically shut off before overflowing while the system was in filtration mode.

29. ISP's breach of its implied warranty of merchantability caused tank 3 to overflow, in turn, causing the diesel spill forcing Equinix to incur costs and expenses in cleaning up and remediating the diesel spill. In addition, groundwater was impacted at the site and is currently under long term monitoring.

30. Pursuant to Cal. Com. Code §2315, ISP impliedly warranted that the fuel filtration and transfer system would be fit and suitable for the particular purpose of safely filtering and transferring diesel fuel at the facility.

31. A diesel fuel filtration and transfer system that does not automatically shut off before overflowing renders that system unfit and unsuitable for use as a fuel filtration and transfer system.

32. ISP breached its warranty of fitness for a particular purpose as the diesel fuel filtration and transfer system was designed, installed, and programmed without the ability to automatically shut off before overflowing while the system was in filtration mode.

33. ISP's breach of its implied warranty of fitness for a particular purpose caused tank 3 to overflow, in turn, causing the diesel spill forcing Equinix to incur costs and expenses in cleaning up and remediating the diesel spill. In addition, groundwater was impacted at the site and is currently under long term monitoring.

34. As a direct and proximate result of ISP's breaches of warranties, Equinix suffered damages to its real property consisting of the cost to remove and remediate the diesel spill as well future environmental compliance costs and possible restrictions on the use of the property.

WHEREFORE, EQUINIX demands judgment against ISP for damages in excess of $475,000.00 together with interest, costs, attorneys' fees, and such other relief as may be awarded by the Court.

## COUNT III– BREACH OF CONTRACT FOR INDEMNITY

35. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

36. As part of the design, sale, installation and programing of the diesel fuel filtration and transfer system, pursuant to the January 4, 2017 terms and conditions, ISP agreed to indemnity Equinix for all property damages arising out of or attributable to ISP's negligent acts, errors or omissions or for a breach of or any representation or warranty made by ISP.

37. The duty to indemnity includes the duty to reimburse Equinix for all costs and expenses, including attorneys' fees.

38. Equinix has and will incur expenses and attorneys' fees and to the extent that ISP is found to have been negligent or breach its warranties, Equinix is entitled be indemnified for damages to its real property consisting of the cost to remove and remediate the diesel spill as well future environmental compliance costs and possible restrictions on the use of the property, and the expenses and attorneys' incurred as a result of the diesel fuel leak and this litigation.

WHEREFORE, EQUINIX demands judgment against ISP for damages in excess of $475,000.00 together with interest, costs, attorneys' fees, and such other relief as may be awarded by the Court.

Respectfully submitted,

COZEN O'CONNOR

BY: */s/ William N. Clark*
WILLIAM N. CLARK, JR., ESQUIRE
Attorney I.D. No. 056471993
1010 Kings Highway South
Cherry Hill, NJ  08034
(856) 910-5000
wclark@cozen.com

*Attorneys for Plaintiff*

8